EDDIE DEAN GREGORY *v.* STATE OF INDIANA.

[No. 2-474A78. Filed July 1, 1975.]

660

*Mark W. Shaw*, of Indianapolis, for appellant.

*Theodore L. Sendak*, Attorney General, *G. Philip Duckwall*, Deputy Attorney General, for appellee.

## CASE SUMMARY

BUCHANAN, J.—Defendant-Appellant Eddie Dean Gregory (Gregory) appeals from a jury conviction of robbery,[1] claiming failure to prove that anyone was put "in fear", insufficient identity testimony to corroborate fingerprint evidence presented at trial, and jury misconduct in disregarding the court's instruction not to discuss the fact that Gregory chose not to take the stand in his own defense.

We affirm.

## FACTS

The evidence and facts most favorable to the State are as follows:

On November 21, 1972, Gregory and two unidentified confederates entered Richard's Market Basket, Inc., located at 3701 East 38th Street, Indianapolis, about ten o'clock in the morning. As Rosie O'Connor (Cashier No. 1) was working the cash register next to the office, Gregory approached her and stated, "Don't touch any alarms, don't touch anything, open the office door and let me in or I will blow your head off." While making this threat, Gregory "had his arm in the pocket of his coat laying on the counter." Testifying that because she was afraid, Cashier No. 1 unlocked the door. Once inside, Gregory stayed down low, picked up a paper sack and ordered the cashier to open and unlock everything. She unlocked one safe. Seeing that she could only unlock one of the two safes in the office, Gregory attempted to open the other

1. IC 1971, 35-13-4-6, Ind. Ann. Stat. § 10-4101 (Burns 1956 Repl.)

safe by tugging on its handle. Frustrated in this attempt Gregory then "pulled the tills out and threw them on the floor" and deposited the money in his paper sack. He then shoved open the office door and departed with his two companions.

While these events transpired, Alice Stanley (Cashier No. 2) was stationed at the third cash register from the office. When she attempted to see why Gregory was in the office, one of the other two men poked something in her back and told her not to move, to stay quiet, and not to get excited.

At trial both cashiers identified Gregory as the individual in the office at the time of the robbery, Cashier No. 2 being particularly positive in her indentification. In addition, latent fingerprints were found at the scene of the crime on the handles of both safes and on the drawer handle of one safe, which were positively identified as those of Gregory.

Gregory presented no evidence or witnesses at trial, but did move for a directed verdict at the close of State's case in chief. The jury found him guilty of robbery as charged, and the court sentenced him to imprisonment for a period of not less than ten nor more than twenty-five years, fining him $41.00 in addition as court costs.

Subsequent to trial Gregory learned that one of the jurors admitted during voir dire examination in a later trial that the jurors did discuss the fact that he did not take the stand and held this fact against him. A partial transcript of the voir dire examination of the juror, Mrs. Margaret Keifer, in the later trial is included in the record of this case.

## ISSUES

| | |
|---|---|
| ISSUE ONE. | Did the State fail to present sufficient evidence to prove that anyone was put "in fear" . . . an essential element of the crime of robbery? |
| ISSUE TWO. | Was the identification evidence sufficient to sustain the judgment of and conviction for robbery? |

ISSUE THREE. Did the trial court err in overruling the defendant's motion for a directed verdict concerning the State's alleged failure to provide sufficient identification testimony to corroborate the fingerprint evidence presented at trial?

ISSUE FOUR. Should a new trial be granted Gregory because one of the jurors admitted that consideration was given by the jury to the fact that Gregory did not take the stand in his own defense?

As to ISSUE ONE, Gregory contends that the State failed to prove that anyone was actually placed "in fear," in that there was no evidence that any weapon of any kind was seen and the testimony of the State's witnesses was highly contradictory as to whether there was ample opportunity to resist the alleged illegal acts.

The State responds that there was sufficient evidence to sustain its burden on this element in the testimony of Cashier No. 1 that she obeyed Gregory's orders only because she was afraid.

As to ISSUE TWO and ISSUE THREE, Gregory contends that the State failed to produce the corroborative identification testimony required to substantiate a guilty verdict where fingerprint evidence has been introduced. In this connection, Gregory asserts that the trial court clearly erred in overruling the defendant's Motion for a Directed Verdict at the close of the State's evidence.

In response, the State argues that the record reveals sufficient identification evidence in the two eyewitness identifications of Gregory as one of the robbers plus the positive identification of his fingerprints as those left at the scene of the crime.

As to ISSUE FOUR, Gregory contends that he has been so prejudiced by the jury's consideration of his failure to

take the stand that he was denied a fair trial regardless of the strength or weakness of the evidence against him.

The State contends that the tendered proceedings from a subsequent action are extraneous to the Record in this case and cannot be considered by this court on review. Furthermore, by failing to cite any authorities in support of his position, the State asserts that Gregory has waived this alleged error.

## DECISION

ISSUE ONE

CONCLUSION—It is our opinion that the evidence was sufficient to establish the element of "putting in fear."

"Putting in fear" is an esesntial element of the crime of robbery (*See* IC 1971, 35-13-4-6, Ind. Ann. Stat. § 10-4101 (Burns 1956 Repl.)).

But "it is not essential in a robbery conviction that the victim specifically testify that he was 'in fear' if there is sufficient evidence of probative value from which such inference might reasonably be drawn." *Chatman* v. *State* (1975), 164 Ind. App. 97, 326 N.E.2d 839, quoting from *Perkins* v. *State* (1973), 156 Ind. App. 163, 294 N.E.2d 846, 847.

And:

"It is well recognized that the use of a toy gun, or the mere appearance that the defendant was in possession of a gun [or other weapon] will be sufficient to establish the 'violence or by putting in fear' element of robbery." *Jackson* v. *State* (1971), 257 Ind. 477, 275 N.E.2d 538, 540.

There was direct testimony by Cashier No. 1 that she obeyed Gregory's orders only because she was afraid. Furthermore, Gregory's threats and his accompanying actions clearly substantiated the appearance that he was in possession of a gun or other weapon. Thus, substantial evidence of probative value was presented at trial from which the jury could reasonably infer that Cashier No. 1 was "put in fear."

ISSUES TWO AND THREE

CONCLUSION—It is our opinion that sufficient identification evidence was presented and the trial court did not err in overruling Gregory's Motion for a Directed Verdict.

Gregory merely quarrels with the evidence against him. A defendant is only entitled to a directed verdict under limited circumstances:

> "A directed verdict is properly granted only where there is a total absence of evidence on some essential element of the offense charged, or where the evidence is without conflict and is suspectible of but one inference in favor of the accused." *State* v. *Kelsey* (1975), 163 Ind. App. 543, 325 N.E.2d 218, 219.

See also,

*Releford* v. *State* (1975), 163 Ind. App. 534, 325 N.E.2d 214, 217.

The State need only present a prima facie case and not proof beyond a reasonable doubt. *State* v. *Overmyer* (1973), 155 Ind. App. 689, 294 N.E.2d 172.

Not only did two eyewitnesses identify Gregory as one of the robbers, but there was positive identification of his fingerprints on the cash drawer and both safe handles by a police expert. Thus, he was sufficiently identified as one of the robbers to withstand a Motion for a Directed Verdict.

ISSUE FOUR

CONCLUSION—It is our opinion that a juror's statement in a subsequent trial that the jury considered Gregory's failure to take the stand may not be used to impeach the jury's verdict.

Jurors are not allowed to impeach their verdicts. So says our Supreme Court:

> "If this Court were to permit individual jurors to make affidavits or give testimony disclosing the manner of deliberation in the jury room and their version of the reasons for rendering a particular verdict, there would be no reasonable end to litigation. Jurors would be harassed by both sides of litigation and find themselves in a contest of affidavits and counter-affidavits and arguments and re-arguments as to why and how a certain verdict was reached.

Such an unsettled state of affairs would be a disservice to the parties litigant and an unconscionable burden upon citizens who serve on juries." *Stinson* v. *State* (1974), 262 Ind. 189, 198, 313 N.E.2d 699, 704.

The mere fact the impeachment was during voir dire in a subsequent case rather than in affidavit form is of no consequence. *See: Stinson* v. *State, supra* (and cases cited therein) ; *Turczi* v. *State* (1973), 261 Ind. 273, 301 N.E.2d 752 (and cases cited therein).

Judgment affirmed.

Sullivan, P.J. and White, J., concur.

NOTE.—Reported at 330 N.E.2d 130.